# No. 15-1220

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

————————————

### UNITED STATES OF AMERICA,

**Plaintiff-Appellee**

**v.**

### GERALD I. KATZ AND SHEILA KATZ,

**Defendants-Appellants**

————————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

————————————

## BRIEF FOR THE APPELLEE

————————————

CAROLINE D. CIRAOLO
*Acting Assistant Attorney General*

ROBERT W. METZLER                    (202) 514-3938
RICHARD CALDARONE                    (202) 514-2947
*Attorneys, Tax Division*
*Department of Justice*
*Post Office Box 502*
*Washington, D.C. 20044*

*Of Counsel:*
ROD J. ROSENSTEIN
*United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents.................................................................i

Table of authorities............................................................ii

Statement of jurisdiction.....................................................1

Statement of the issue........................................................2

Statement of the case ........................................................2

    A.    Katz's tax liability and his breach of the parties'
first settlement agreement ............................................2

    B.    The foreclosure order and Katz's breach of the
parties' second settlement agreement ...........................5

    C.    Katz's motion for relief from the foreclosure order .......7

    D.    The District Court's opinion ........................................10

Summary of Argument......................................................11

Argument ........................................................................12

    The District Court did not abuse its discretion by denying Katz's
motion for relief from the foreclosure order .................................12

    Standard of review ...........................................................12

    A.    The Government did not cause Katz's breach of
the settlement agreement...........................................13

    B.    In any event, Katz's argument lacks a plausible
legal basis ................................................................19

    C.    Katz's collateral arguments lack merit........................24

Conclusion.......................................................................26

Statement regarding oral argument.......................................27

Certificate of compliance ....................................................28

Certificate of service .........................................................29

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Aikens v. Ingram,*
  652 F.3d 496 (4th Cir. 2011) (en banc)............................12, 13

*Alois v. Waldman,*
  149 A.2d 406 (Md. 1959)..................................................22, 23

*Am. Trading & Prod. Corp. v. United States,*
  172 F. Supp. 165 (D. Md. 1959)............................................24

*Avritt v. Reliastar Life Ins. Co.,*
  615 F.3d 1023 (8th Cir. 2010)...............................................21

*Badgett v. Sec. State Bank,*
  807 P.2d 356 (Wash. 1991) (en banc)....................................21

*Blondell v. Littlepage,*
  991 A.2d 80 (Md. 2010)........................................................23

*Browder v. Dir., Dep't of Corrs. of Ill.,*
  434 U.S. 257 (1978)..............................................................13

*Citizens Nat'l Bank of Orlando v. Vitt,*
  367 F.2d 541 (5th Cir. 1966)...............................................24

*Coles Dep't Store v. First Bank (N.A.)—Billings,*
  783 P.2d 932 (Mont. 1989)...................................................21

*Connell v. Indiana Ins. Co.,*
  334 F.2d 993 (4th Cir. 1964)...............................................24

*E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship,*
  213 F.3d 175 (4th Cir. 2000).................................................21

*Glassman Constr. Co. v. Md. City Plaza, Inc.,*
  371 F. Supp. 1154 (D. Md. 1974).........................................24

*Grady v. State Farm Mut. Auto. Ins. Co.,*
  264 F.2d 519 (4th Cir. 1959)...............................................24

*In re Naranjo,*
  768 F.3d 332 (4th Cir. 2014)...............................................12

*In re Peanut Crop Ins. Litig.,*
  524 F.3d 458 (4th Cir. 2008)...............................................20

*Lamont Television Sys., Inc. v. Gates Hudson & Assocs., Inc.,*
  943 F.2d 49 (table), 1991 WL 170289
  (4th Cir. Sept. 6, 1991).........................................................23

## Cases (continued):                                        Page(s)

*Margoles v. Johns,*
    798 F.2d 1069 (7th Cir. 1986) (per curiam) ......................... 13

*Metavante Corp. v. Emigrant Sav. Bank,*
    619 F.3d 748 (7th Cir. 2010) ................................................. 21

*Morrissey v. William Morrow & Co.,*
    739 F.2d 962 (4th Cir. 1984) ............................................... 17

*Murchison v. Astrue,*
    466 F. App'x 225 (4th Cir. 2012) ........................................ 13

*Ohio Valley Envtl. Coal v. Aracoma Coal Co.,*
    556 F.3d 177 (4th Cir. 2009) ............................................... 20

*Pa. Threshermen & Farmer's Mut. Cas. Ins. Co. v. Owens,*
    238 F.2d 549 (4th Cir. 1956) ............................................... 24

*Parker v. Columbia Bank,*
    604 A.2d 521 (Md. Ct. Spec. App. 1992) ............................. 21

*Polek v. J.P. Morgan Chase Bank, N.A.,*
    36 A.3d 399 (Md. 2012) ....................................................... 23

*Precision Pine & Timber, Inc. v. United States,*
    596 F.3d 817 (Fed. Cir. 2010) ............................................. 21

*R.A. Weaver & Assocs., Inc. v. Haas & Haynie Corp.,*
    663 F.2d 168 (D.C. Cir. 1980) ............................................. 24

*Reid v. Angelone,*
    369 F.3d 363 (4th Cir. 2004) ............................................... 13

*Scott v. Family Dollar Stores, Inc.,*
    733 F.3d 105 (4th Cir. 2013) ............................................... 12

*Scott v. United States,*
    328 F.3d 132 (4th Cir. 2003) ............................................... 25

*U.S. ex rel. Davis v. U.S. Training Ctr., Inc.,*
    498 F. App'x 308 (9th Cir. 2012) ........................................ 20

*U.S. ex rel. Ubl v. IIF Data Solutions,*
    650 F.3d 445 (4th Cir. 2011) ............................................... 20

*United States v. Marizcales-Delgadillo,*
    243 F. App'x 435 (10th Cir. 2007) ...................................... 26

*Vanadium Corp. of Am. v. Fid. & Deposit Co. of Md.,*
    159 F.2d 105 (2d Cir. 1947) ................................................. 24

*Vantassel v. Rozum,*
    469 F. App'x 110 (3d Cir. 2012) ......................................... 25

**Statutes:**                                          **Page(s)**

26 U.S.C. (I.R.C.):

    § 6325(a)(1) ...................................................................18
    § 6325(b)(4)(A)(i) .........................................................18
    § 7402 .............................................................................1
    § 7403 .............................................................................1

28 U.S.C.:

    § 1291 .............................................................................2
    § 1331 .............................................................................1
    § 1340 .............................................................................1
    § 1345 .............................................................................1
    § 2107(b) ........................................................................2
    §§ 3001–08 .....................................................................3

**Rules:**

    Fed. R. App. P. 4(a)(1)(B) ..............................................2
    Fed. R. App. P. 4(a)(4)(A)(iv) ........................................2

    Fed. R. Civ. P. 59(e) .......................................................2
    Fed. R. Civ. P. 60(b)(6) .......................... 1, 2, 7, 9, 11, 13, 16, 25, 26

    Internal Revenue Manual § 5.17.2.5 ............................18

**Miscellaneous:**

    2-5 Corbin on Contracts § 5.27 (2015) .........................21

    IRS Pub. 1468 (Jan. 2014) .............................................18

    14A Mertens Law of Federal Income Taxation § 54A:94
        (rev. ed. Apr. 2015) ................................................18

    Restatement (Second) of Contracts § 205 cmt. d (1981) ...............20

## STATEMENT OF JURISDICTION

The United States filed this suit to reduce to judgment over $5 million in unpaid federal income tax assessments against Gerald I. Katz, to obtain an order requiring Katz to make installment payments of his back taxes, and to foreclose federal tax liens on real property in Potomac, Maryland jointly owned by Katz and his wife, Sheila Katz. (JA 9–20.)[1]  The District Court had jurisdiction under 26 U.S.C. ("I.R.C.") §§ 7402 and 7403 and 28 U.S.C §§ 1331, 1340 and 1345.

Only the foreclosure claim remains at issue.  On September 24, 2013, the District Court entered an order permitting the United States to foreclose the federal tax liens on the Potomac property.  (JA 94.)  On August 21, 2014, Katz filed a motion for relief from that order under Federal Rule of Civil Procedure 60(b)(6).  (JA 122–32.)  The District Court denied Katz's motion on October 27, 2014.  (JA 192.)  On November 3, 2014, Katz filed a motion for reconsideration of that denial

---

[1]    Citations to "JA __" are to the joint appendix, and citations to "Dkt. __" are to docket entries in the District Court.  References to "Br. __" are to appellants' opening brief.

- 2 -

under Federal Rule of Civil Procedure 59(e) (JA 193–97), and the
District Court denied that motion on December 30, 2014 (JA 221).

On February 26, 2015, Katz filed a notice of appeal (JA 222–23)
from the December 30, 2014 order denying his Rule 60(b)(6) motion.
The notice was timely as to that order only. *See* 28 U.S.C. § 2107(b);
Fed. R. App. P. 4(a)(1)(B) & (a)(4)(A)(iv). This Court has jurisdiction
over the appeal from the December 31, 2014 order under 28 U.S.C.
§ 1291.

## STATEMENT OF THE ISSUE

Whether the District Court correctly denied Katz's motion for
relief from the order allowing the United States to foreclose the federal
tax liens on Katz's real property where Katz had over $5 million in
outstanding tax liabilities, Katz breached the parties' settlement
agreement regarding the property subject to foreclosure, and the
Government did not cause the breach.

## STATEMENT OF THE CASE

### A.  Katz's tax liability and his breach of the parties' first settlement agreement

The United States filed this action against Gerald Katz to reduce
to judgment assessments totaling over $5 million against Katz for

- 3 -

unpaid income taxes, interest, and penalties for tax years 1996 through 2009. (JA 9–20, 21–31.) In addition, the Government sought an order requiring Katz to make monthly installment payments on his tax liability pursuant to the Federal Debt Collection Procedures Act of 1990, 28 U.S.C. §§ 3001–08. (JA 26–27.) It also sought to foreclose federal tax liens on a house in Potomac, Maryland that is jointly owned by Katz and his wife, Sheila Katz.[2] (JA 25–26.)

On November 26, 2012, the Government and Katz reached a settlement that was entered as an agreed order in the District Court the following day. (JA 39–41.) The November 2012 settlement represents a "[j]udgment * * * in favor of the United States" and against Katz "in the amount of $5,462,935.25 for federal income taxes for the years 1996 through 2009, together with statutory additions and interest." (JA 39.) As part of the settlement, Katz agreed to (1) pay "the sum of $5,000 per month" toward his outstanding federal tax liability; (2) file any "past-due federal income tax returns * * * within 90 days"; (3) "timely file" his future federal income tax returns for "a period of ten years"; (4) "make

_____

[2] Sheila Katz is named as a defendant in this case only because she has an interest in the Potomac property. (JA 23.)

- 4 -

MONTHLY tax deposits of" his future "estimated income tax liabilities" for the same ten-year period; and (5) pay $312,337 to the United States within six months of the court's entry of the agreed order on November 27, 2012, in order to obtain a discharge of the Potomac property "from existing recorded federal tax liens." (JA 39–40.)

Katz breached the November 2012 settlement in three separate ways. Katz did not file his past-due income tax return for 2011 within 90 days.[3] (JA 73.) He also did not make any payments, much less monthly payments, of estimated taxes for tax years 2012 and 2013. (*Id.*) Finally, he failed to make the $312,337 payment required to obtain a discharge of the Potomac property from existing federal tax liens. (JA 54.)

---

[3]    Katz eventually filed his 2011 income tax return on June 27, 2013—roughly four months after the deadline in the November 2012 settlement. (JA 73.) The IRS then assessed him with $174,978 in unpaid taxes, interest, and statutory additions for that tax year. (*Id.*) The IRS also assessed Katz with $452,261.33 in unpaid taxes, interest, and statutory additions for tax year 2010. (JA 72.) These assessments are not included in the $5,462,935.25 judgment entered against Katz in this case.

**B.    The foreclosure order and Katz's breach of the parties' second settlement agreement**

After Katz failed to make the $312,337 payment called for by the November 2012 settlement, the District Court entered a consent order reopening this case.  (JA 59–61; *see also* Dkt. 37.)  In addition, the United States moved for an order permitting it to foreclose the federal tax liens on the Potomac property and to sell that property in partial satisfaction of Katz's federal income tax liability.  (JA 47–52.)  The District Court granted that motion.  (JA 94.)  Then, on October 25, 2013, the District Court entered a consent order that appointed a receiver and expressly permitted the sale of the property.  (JA 110–13.)

On November 26, 2013, the parties reached a second settlement agreement, which was intended "to resolve the United States' tax lien foreclosure action" concerning the Potomac property.  (JA 160.)  The settlement contained the following terms:

> 1.    Gerald Katz will pay $420,100 to the United States by December 23, 2013 (the "Payment").  This payment shall be made by a certified check or cashier's check payable to the U.S. Department of Justice, or through other agreed-upon means such as wiring.  This payment will apply to the judgment entered against Gerald Katz in [this] case.
>
> 2.    Upon the Payment, the United States will discharge Gerald Katz's real property [in Potomac, Maryland] from the

federal tax liens relating to the federal income tax liabilities
of Gerald Katz for tax years 1996 through 2010.

3.    Upon the Payment, the United States will file a notice
of settlement with the [District Court] requesting the [c]ourt
to vacate the foreclosure order and receiver appointment
order.

4.    The United States agrees that the receiver appointed
under the [District Court's] 10/25/13 order will not exercise
his authority under that order, unless Gerald Katz fails to
make the Payment by December 23, 2013.

(*Id.*)

Katz did not make the $420,100 payment required by the

settlement agreement before the deadline of December 23, 2013.

Instead, he repeatedly asked the Government for extensions of time.

(JA 157.)  Katz provided an array of excuses for these requests:  He

initially sought an extension on the ground that he hoped to generate

cash for the payment by refinancing of his mortgage, but could not

complete the refinancing until his 2013 tax return was complete.  (*Id.*)

He then sought three additional extensions on the ground that he

needed additional time to negotiate the payment of unpaid state income

taxes with the state of Maryland.  (*Id.*)  In fact, in a letter dated

February 25, 2014, Katz's lawyer stated that "[t]he *only* thing

preventing resolution now, this week, * * * is my inability to resolve

things" with Maryland.  (JA 162 (emphasis added.))  Katz nevertheless went on to request a fifth extension of time because he purportedly needed to obtain a new case number for the refinancing from the Federal Housing Administration.  (JA 157.)

The Government agreed to provide Katz with each of these five extensions of time, which collectively extended the time in which to make the $420,100 payment from December 23, 2013, until June 30, 2014.  (JA 157.)  On June 24, 2014, however, the United States informed Katz that any further extensions of the deadline for making the payment would not be in the Government's best interest.  (*Id.*)  Katz then breached the November 2013 settlement agreement by failing to make the $420,100 payment by the extended deadline of June 30, 2014.  (*See* JA 126.)

### C.  Katz's motion for relief from the foreclosure order

Despite this breach, Katz filed a motion under Federal Rule of Civil Procedure 60(b)(6) for relief from the District Court's order permitting the United States to foreclose the federal tax liens on the Potomac property.  (JA 122–32.)  The motion stated that Katz was attempting to raise the funds for the $420,100 payment by refinancing

the mortgage on the Potomac property. (*See* JA 124.) And it contended that the United States had prevented Katz from completing the refinancing, and had thus breached the settlement agreement, by failing to provide "a letter from the Internal Revenue Service confirming that it would discharge all tax liens in exchange for payment and identif[ying] * * * the individual liens." (JA 125 (emphasis omitted).)

Katz, however, did not attach any evidence to his motion showing that he requested such a letter from the Government before he breached the settlement agreement. Katz did submit emails dated between October 2013 and January 2014 in which his lawyer requested that the Government provide "a statement documenting" that the Potomac property "will be discharged from all federal tax liens upon his * * * payment of an agreed-to amount." (JA 133–34.) But these emails did not state that Katz required an itemized list of the relevant liens. (*See id.*) And the IRS fulfilled Katz's request by providing him with a Conditional Commitment to Discharge Certain Property from Federal Tax Lien, which stated that the Potomac property would be discharged from existing federal tax liens if Katz made the $420,100 payment and provided certain documents to the Government. (JA 140–41.)

- 9 -

In response to Katz's Rule 60(b)(6) motion, the Government provided an affidavit from its trial counsel stating that Katz had first articulated his request for an itemized list of federal tax liens in a letter from his lawyer that was "dated July 1, 2014"—one day after Katz missed the deadline for making the $420,100 payment.  (JA 158.)  The July 1 letter further asserted that the need for a list of itemized tax liens was "the main condition that is unsatisfied and has caused [Katz] to be unable" to make the $420,100 payment.[4]  (JA 175.)

The Government also submitted to the District Court the email that its trial counsel sent in response to the July 1 letter.  (JA 176.)  That email noted that the July 1 letter "rais[ed] an issue that" the parties had not previously "discuss[ed] either in writing or by phone." (*Id*.)  It also noted that the information Katz sought "was plainly" included in the settlement and "can also be discerned from looking at county records or title report[s]."  (*Id*.)  And the email pointed out that an itemized list of tax liens would no longer be "useful," because "the

---

[4]     Katz made similar assertions in later communications with the Government.  (*See* JA 143–44 (letter dated August 13, 2014); JA 186–87 (letters from lenders dated September 9, 2014, and September 10, 2014).)

- 10 -

terms of the settlement were not met" and any conditional discharge letter would thus "no longer be effective." (*Id.*)

## D.    The District Court's opinion

On October 9, 2014, the District Court sent the parties a letter acknowledging that "it may be that [the court] should simply deny the [Rule 60(b)(6)] motion [and] that the property in question should be sold." (JA 188.) The court, however, suggested that this case could be "more promptly resolved" if the Government provided the information that Katz requested in his motion and if Katz's potential lenders then "decide[d] within 21 days" whether they would "refinance the property in question." (*Id.*) The court allowed the parties to file "objection[s] to [this] process," and it also stated that it would "promptly deny [Katz's] motion" if "the refinancing cannot be obtained." (*Id.*)

The Government objected to the District Court's proposed process on numerous grounds, including that the process would "require the United States to affirm the November 2013 settlement" even though Katz had breached the settlement. (JA 189.) The Government also noted that at least one of Katz's potential lenders erroneously believed

that the payment would have resolved "all of Katz's federal tax liabilities." (JA 189–90.)

After receiving the Government's objections, the District Court denied the Rule 60(b)(6) motion because Katz "ha[d] failed to abide by the terms of the settlement agreement." (JA 192.) Katz filed a motion to reconsider that decision (JA 193–96), which the District Court also denied (JA 221). Katz now appeals from the denial of his Rule 60(b)(6) motion.[5]

## SUMMARY OF ARGUMENT

Katz's principal argument on appeal is that the Government caused his breach of the November 2013 settlement agreement by failing to provide an itemized list of federal tax liens. That argument is belied by the record. Nothing in the settlement agreement states or

---

[5] Katz filed a motion in the District Court to stay activities related to the foreclosure and forced sale of the Potomac property pending resolution of this appeal. (Dkt. 64.) The District Court denied that motion (JA 224), and Katz chose not to seek a stay from this Court. The United States then moved for an order requiring Katz to vacate the Potomac property. (Dkt. 72.) The District Court granted that motion on August 7, 2015, in an order noting that Katz "apparently has not cooperated with the [r]eceiver by providing access to the property." (Dkt. 76.)

- 12 -

even implies that the Government had an obligation to provide an
itemized list of tax liens.  The evidence also demonstrates both that
Katz first requested such a list only after he breached the settlement
agreement and that he could have obtained the same list from public
records.  Furthermore, although Katz seeks to ground his argument in
the duty to cooperate, which forms part of the implied covenant of good
faith and fair dealing, that duty may not be used to read new
affirmative obligations into the settlement agreement.

## ARGUMENT

### The District Court did not abuse its discretion by denying Katz's motion for relief from the foreclosure order

### Standard of review

This Court reviews the "District Court's ruling on a [Rule] 60(b)
motion for abuse of discretion." *Aikens v. Ingram*, 652 F.3d 496, 501
(4th Cir. 2011) (en banc).  "'A District Court abuses its discretion'" only
if it "'rest[s] its decision on a clearly erroneous finding of a material
fact'" or "'misapprehend[s] the law with respect to [the] underlying
issues.'" *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (quoting *Scott
v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013)).

- 13 -

## A.    The Government did not cause Katz's breach of the settlement agreement

"'[A] motion under Rule 60(b)(6) may not be granted absent extraordinary circumstances.'" *Murchison v. Astrue*, 466 F. App'x 225, 229 (4th Cir. 2012) (quoting *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004)); *accord Aikens*, 652 F.3d at 500. Such circumstances exist only where there is "'a substantial danger that the underlying judgment was unjust.'" *Id.* (quoting *Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir. 1986) (per curiam)). "This very strict interpretation * * * is essential," because a "broad[er] application would undermine numerous other rules that favor the finality of judgments." *Aikens*, 652 F.3d at 501 (internal quotation marks omitted).

Katz cannot show that the order permitting the United States to foreclose the federal tax liens on the Potomac property is unjust.[6] On appeal, Katz concedes that he "breached the [November 2013] settlement agreement * * * when he failed to pay" $420,100. (Br. 11.)

---

[6]    The propriety of the District Court's initial decision to enter the foreclosure order is not at issue on appeal, because "'an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review.'" *Aikens*, 652 F.3d at 501 (quoting *Browder v. Dir., Dep't of Corrs. of Ill.*, 434 U.S. 257, 263 n.7 (1978)).

- 14 -

Katz contends, however, that the Government caused this breach by "refus[ing] to provide a * * * statement identifying" the individual "tax liens that would be discharged" if he made the $420,100 payment required by the agreement. (Br. 9.) That argument is belied by the record.

The linchpin of Katz's argument is his contention that he "gave the Government written notice of his specific need[ ]" for an itemized list of federal tax liens. (Br. 17; *see also* Br. 6–7, 15–16, 19.) But that is not so. To the contrary, the Government did not have *any* notice of Katz's purported need for an itemized list of federal tax liens.

Nothing in the November 2013 settlement agreement suggested that Katz would need such a list. The terms of that agreement—which Katz does not recite in his brief on appeal—did not require the Government to provide an itemized list of liens. (*See* pp. 5–6, *supra* (quoting JA 160–61).) In fact, the agreement did not require the United States to take any affirmative action at all until after Katz made the $420,100 payment—or to provide Katz with any information at any time. (*See id.*) And although Katz argues that the list of liens was necessary to complete the refinancing of his mortgage (Br. 5–6), the

agreement also did not specify that Katz would use funds from a refinancing to make the $420,100 payment. It instead imposed an unconditional obligation on Katz to make the payment by a specified date. (*See* JA 160–61.)

Furthermore, although Katz's lawyer was, by his own admission, "in frequent contact with the government" in the months after the November 2013 settlement agreement was signed (JA 124), Katz made no request for an itemized list of federal tax liens during that time. In particular, none of the five extensions of time that Katz requested to make the $420,100 payment suggested that Katz required an itemized list of tax liens before he could perform his obligations under the agreement. To the contrary, Katz's lawyer represented that the need to reach an agreement with the State of Maryland concerning Katz's unpaid state income taxes represented the "only" obstacle to his ability to make the $420,100 payment. (JA 162.)

It was not until July 1, 2014—one day *after* the deadline for making the $420,100 payment had passed—that Katz first articulated his request for a letter listing the individual liens to be discharged under the settlement agreement and claimed that the absence of such a

- 16 -

letter caused his failure to make the payment. (JA 158, 176.) By that time, however, Katz's request was academic. As the Government's trial counsel stated in response to that letter, "the terms of the settlement were not met," and any letter listing the liens that would have been discharged had Katz performed his obligations under the agreement would therefore be nugatory. (JA 176.)

On appeal, Katz contends that he made earlier requests for the same information (*see* Br. 6, 17), but he does not, and cannot, cite to anything in the record evincing such requests. Instead, Katz chiefly relies (Br. 17) on his request, made in October 2013 and January 2014, for a statement "that [his] house will be discharged from all federal tax liens upon" payment of $420,100 (JA 133; *see also* JA 134). That general request, however, did not ask for an itemized list of liens, and as Katz concedes (Br. 6, 16), the IRS fulfilled his October 2013 request months before the final deadline for making the payment expired (*see* JA 140). Katz also cites to his Rule 60(b)(6) motion, which advanced the same argument he makes on appeal (Br. 6 (citing JA 125)), but this

- 17 -

"argument of counsel" is, of course, "not evidence" (*Morrissey v. William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984)).[7]

Even if Katz had requested a conditional discharge letter containing an itemized list of liens from the Government, not providing that list would not have impeded Katz's performance under the settlement agreement, because the same information was readily available from public sources. Specifically, the settlement agreement itself states that, if Katz made the $420,100 payment, the Potomac property would be discharged from the "federal tax liens relating to" Katz's "federal income tax liabilities * * * for tax years 1996 through 2010." (JA 160.) This description, without more, "confirm[ed] which federal tax liens would be discharged." (Br. 10.) And the uncontradicted evidence shows that the description in the settlement agreement was sufficient to allow either Katz or his prospective lenders to determine which individual liens would be discharged by "looking at

---

[7]    Katz further cites to the conditional discharge letter the IRS provided (Br. 6 (citing JA 140)), but that letter merely shows that the Government provided precisely the information that Katz requested in his October 2013 email.

[either] county records or [a] title report.'" (JA 159 (quoting JA 176).)[8]
For these reasons, Katz cannot show that the District Court's
foreclosure order is unjust.

In fact, it is Katz's request for relief from the foreclosure order
that poses a serious risk of injustice. It is undisputed that Katz has
failed to fully satisfy his tax obligations in any year between 1996 and
(at least) 2013 and that he continued to accrue unpaid income tax
liability even after this litigation began. (JA 73.) It is also undisputed
that Katz breached the parties' initial settlement agreement, signed in

---

[8]    At various points, Katz refers to the letter he purportedly
requested as a "payoff statement." (Br. 5–7, 15, 17–18.) As the
Government's trial counsel repeatedly explained to Katz's lawyers (*see*
JA 157–58), however, a payoff statement is not available in these
circumstances. "The IRS will issue a payoff letter to taxpayers or to
third parties" only when it releases one or more federal tax liens. IRS
Pub. 1468 (Jan. 2014), *available at* www.irs.gov/pub/irs-pdf/p1468.pdf
(last accessed Aug. 20, 2015). And liens can be released only when a
taxpayer's entire liability is either "fully satisfied or * * * legally
unenforceable." I.R.C. § 6325(a)(1). Here, by contrast, the $420,100
payment represented "an amount of money" the Government
determined was "equal to the value of [its] interest" in the Potomac
property. *Id.* § 6325(b)(4)(A)(i). The $420,100 payment would thus
have simply resulted in the discharge of the Potomac property from
existing federal tax liens. *See id.* Even after that discharge, the liens
would "continue to exist" (14A *Mertens Law of Fed. Income Taxation*
§ 54A:94 (rev. ed. Apr. 2015)) and remain attached to other property
owned by Katz (Internal Revenue Manual § 5.17.2.5).

November 2012 (JA 39–40), by failing to make monthly payments of estimated taxes, by failing to file his overdue 2011 tax return within the time specified, and by failing to make the lump-sum payment required by the agreed order (JA 54, 73). Moreover, Katz concedes (Br. 11) that he breached the parties' November 2013 settlement agreement by failing to make the $420,100 payment required by the agreement despite being afforded numerous extensions of the deadline for doing so. And the fact that Katz first requested an itemized list of federal tax liens immediately after he breached the November 2013 agreement gives rise to the inference that Katz made that request in order to further delay the receiver's efforts to sell the Potomac property. Instead of averting injustice, then, any order granting Katz's request for relief would reward his egregious non-compliance with his federal income tax obligations, his failure to fulfill numerous contractual promises, and his dilatory tactics.

## B. In any event, Katz's argument lacks a plausible legal basis

Even if Katz's argument that the Government caused him to breach the settlement agreement could be squared with the record—and it cannot—the argument would lack a legal foundation. Katz does not

- 20 -

argue that the Government's purported failure to provide an itemized list of liens amounted to a breach of any express term in the November 2013 settlement agreement.  Any such argument would lack merit, because—as shown above (at 14–15)—nothing in the settlement agreement even weakly implies that the Government had a duty to provide Katz with such a list.

Instead, Katz seeks to rely on the so-called "duty to cooperate" (Br. 11), which prevents a contracting party from "interfer[ing] with or fail[ing] to cooperate in the other party's performance" (Restatement (Second) of Contracts § 205 cmt. d (1981)).[9]  That duty, however, cannot

---

[9]     Katz's brief on appeal cites almost exclusively to cases applying Maryland law.  (*See* Br. 11–15.)  But "[s]ettlement agreements operate on contract principles" (*Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 211 (4th Cir. 2009)), and "[w]hen the United States enters into contract relations," this Court "appl[ies] the principles of general contract law, which become federal common law," rather than the law of any particular state (*U.S. ex rel. Davis v. U.S. Training Ctr., Inc.*, 498 F. App'x 308, 315 (9th Cir. 2012) (internal quotation marks omitted); *accord, e.g.*, *In re Peanut Crop Ins. Litig.*, 524 F.3d 458, 470 (4th Cir. 2008)).  Nevertheless, because both the Restatement and the law of various states contain a similar duty, the choice of law issue is immaterial.  *See, e.g.*, *U.S. ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 451 (4th Cir. 2011) ("When applying federal common law to contract issues, courts generally look to the Restatement for guidance.").

- 21 -

help Katz. The duty to cooperate is an "aspect[ ] of the implied duty of good faith and fair dealing." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 820 n.1 (Fed. Cir. 2010); *accord, e.g.*, *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 766 (7th Cir. 2010). And "the covenant of good faith and fair dealing 'does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract.'" *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182 (4th Cir. 2000) (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992) (Motz, J.)) (alterations omitted); *accord, e.g.*, *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1031 (8th Cir. 2010) (citing *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (en banc)); *Coles Dep't Store v. First Bank (N.A.)— Billings*, 783 P.2d 932, 936 (Mont. 1989). Rather, that covenant simply applies to the "performance and enforcement" of the written agreement. 2-5 *Corbin on Contracts* § 5.27 (2015); *accord, e.g.*, *E. Shore Markets*, 213 F.3d at 182. Katz's inability to tie his argument to specific language in the settlement agreement thus forecloses his attempt to rely on the duty to cooperate.

- 22 -

Although Katz's brief on appeal ransacks over a century of contract law (Br. 11–15), none of the cases he cites is to the contrary. Katz relies most heavily on *Alois v. Waldman*, 149 A.2d 406 (Md. 1959) (*see* Br. 14–15), but that case simply illustrates the deficiencies in his argument. *Alois* involved a home purchase contract in which the sale was expressly conditioned on a broker's ability to secure a mortgage for the purchaser. *See id.* at 407–08. After one lender declined to issue the mortgage, the broker received verbal commitments from three lenders willing to issue the loan and repeatedly telephoned the purchasers to seek their cooperation. *Id.* at 408–09. The purchasers, however, prevented the broker from securing the mortgage by failing to return the broker's calls, by approaching lenders directly, and by refusing to provide the broker with any extension of time. *Id.* Under these circumstances, the Maryland Court of Appeals held that the purchasers violated the duty to cooperate. *See id.* at 409.

That holding cannot apply here. The cooperation in *Alois* was tied to a specific contractual provision—the condition that the brokers secure a loan—that self-evidently required some degree of cooperation from the purchasers. Here, by contrast, Katz's argument has no basis

in the express language of the settlement agreement.  Katz's obligation to pay $420,100 was not conditioned on his ability to obtain a loan. Furthermore, the court in *Alois* held that the broker's telephone calls put the purchasers "fairly on notice that [their] cooperation was desired" (*id.* at 409)—and as shown above (at 15–17), Katz did *not* give the Government notice that he needed an itemized list of tax liens.

More generally, the Maryland state cases on which Katz relies (Br. 11–12, 14–15) cannot support his argument that the duty to cooperate applies here, because the Maryland Court of Appeals has adopted the general rule that "no new obligations on the parties are imposed, where the contract is silent, by the implied covenant of good faith and fair dealing." *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012); *accord Blondell v. Littlepage*, 991 A.2d 80, 90–91 (Md. 2010).

The federal cases that Katz cites are also inapposite.  Almost all of those cases involved parties who either violated an express contractual term or acted to prevent the occurrence of an express contractual condition.  *See Lamont Television Sys., Inc. v. Gates Hudson & Assocs., Inc.*, 943 F.2d 49 (table), 1991 WL 170289, at *2–3 (4th Cir. Sept. 6,

- 24 -

1991); *R.A. Weaver & Assocs., Inc. v. Haas & Haynie Corp.*, 663 F.2d 168, 176 (D.C. Cir. 1980); *Citizens Nat'l Bank of Orlando v. Vitt*, 367 F.2d 541, 545–46 (5th Cir. 1966); *Connell v. Indiana Ins. Co.*, 334 F.2d 993, 996 (4th Cir. 1964); *Grady v. State Farm Mut. Auto. Ins. Co.*, 264 F.2d 519, 520 (4th Cir. 1959); *Pa. Threshermen & Farmer's Mut. Cas. Ins. Co. v. Owens*, 238 F.2d 549, 550 (4th Cir. 1956); *Vanadium Corp. of Am. v. Fid. & Deposit Co. of Md.*, 159 F.2d 105, 108 (2d Cir. 1947); *Glassman Constr. Co. v. Md. City Plaza, Inc.*, 371 F. Supp. 1154, 1161 (D. Md. 1974). The only exception concerned the issuance of "false reports." *See Am. Trading & Prod. Corp. v. United States*, 172 F. Supp. 165, 167 (D. Md. 1959). Here, by contrast, Katz has neither attempted to tie his argument to language in the settlement agreement nor provided any evidence that the Government misled him. Thus, the federal case law addressing the duty to cooperate does not support Katz's claim.

## C.    Katz's collateral arguments lack merit

The remaining arguments that Katz raises on appeal also lack merit. Katz argues that the District Court's October 9 letter, which outlined a possible process for resolving the matter before it to which

- 25 -

the parties were free to object (JA 188), amounted to a determination that the Government breached the settlement agreement (*see* Br. 10). That is not so. To the contrary, the letter expressly states that the District Court would "promptly deny" Katz's motion if the alternative that it suggested was not achievable. (JA 188.)

Katz also asserts that the District Court abused its discretion by failing to address his argument that "the Government * * * breached" the settlement agreement. (Br. 11.) But the District Court's holding that Katz breached the agreement (JA 192), combined with the court's recognition of Katz's request for an itemized list of tax liens in its October 9 letter (JA 188), demonstrates that the court considered and rejected Katz's argument that the Government breached the agreement.

In any event, Katz's argument is irrelevant. This Court may "affirm on any ground appearing in the record" (*Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003)), and the record demonstrates that the Government did not breach the settlement agreement (*see supra* pp. 13–19). As a result, Katz would not be entitled to relief even if the District Court had "declined to supply any reasoning to support" its decision to deny the Rule 60(b)(6) motion. *Vantassel v. Rozum*, 469 F. App'x 110,

- 26 -

112 (3d Cir. 2012); *accord, e.g.*, *United States v. Marizcales-Delgadillo*,

243 F. App'x 435, 439 (10th Cir. 2007).

## CONCLUSION

The District Court's order denying Katz's motion for relief under

Federal Rule of Civil Procedure 60(b)(6) should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the United States respectfully submit that oral argument is unnecessary in this case, because the issues on appeal are fully addressed in the briefs. We nevertheless stand ready to present oral argument on behalf of the United States if the Court determines that argument is desirable.

Respectfully submitted,

CAROLINE D. CIRAOLO
  *Acting Assistant Attorney General*

/s/ Richard Caldarone

ROBERT W. METZLER    (202) 514-3938
RICHARD CALDARONE   (202) 514-2947
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  richard.p.caldarone@usdoj.gov
  appellate.taxcivil@usdoj.gov

*Of Counsel:*
ROD J. ROSENSTEIN
  *United States Attorney*

AUGUST 2015

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. __15-1220_____   Caption: ___*United States v. Katz*_____

## CERTIFICATE OF COMPLIANCE
## WITH RULE 28.1(e) or 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

    [X]    this brief contains __5,371__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]    this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

    [X]    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> in <u>14-point Century Schoolbook</u>; *or*

    [ ]    this brief has been prepared in a monospace typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

(s) Richard Caldarone__

## CERTIFICATE OF SERVICE

It is hereby certified that, on this 24th day of August, 2015, this brief was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system and that 8 paper copies were sent to the Clerk by First Class Mail.  I further certify that the CM/ECF system will serve all counsel of record in this case.

      /s/ Richard Caldarone